IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALFREDO RAMIREZ, #79818-079, | § | |
| | § | |
| V. | § | A-12-CV-894-SS-AWA |
| | § | |
| MIKE PEARCE, WARDEN, | § | |
| FCI BASTROP, | § | |

**ORDER ON MOTION TO STRIKE AND REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE SAM SPARKS
      UNITED STATES DISTRICT JUDGE

Before the Court are Petitioner Alfredo Ramirez's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Dkt. No. 1); Respondent Mike Pearce's Response to Petition (Dkt. No. 6); and Petitioner Alfredo Ramirez's Reply (Dkt. No. 7). Also before the Court are: Petitioner Alfredo Ramirez's Supplement to his Petition (Dkt. No. 8); Respondent Mike Pearce's Response to Petitioner's Supplement (Dkt. No. 10); Petitioner Alfredo Ramirez's Motion to Strike Defendant's Response to Petitioner's Supplement (Dkt. No. 11); Respondent Mike Pearce's Response in Opposition (Dkt. No. 12); and Petitioner Alfredo Ramirez's Reply (Dkt. No. 13).

The Magistrate Judge submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I. BACKGROUND

Petitioner Alfredo Ramirez ("Ramirez"), Reg. No. 79818-079, is a federal prisoner incarcerated in the Bureau of Prisons ("BOP") at FCI-Bastrop pursuant to judgments and sentences

in two separate criminal cases in the United States District Court for the Southern District of Texas: Nos. 7:98–CR–00330(7) and 4:99–CR–00080(1). Ramirez's projected release date, including potential good-time credit, is November 3, 2013. *See* Dkt. No. 6, Decl. of K. Boyd ¶ 15 [hereinafter Boyd Decl.]. Ramirez was initially arrested on July 27, 1998, in connection with a criminal complaint filed in the United States District Court for the Southern District of Texas—McAllen Division in cause number 7:98–CR–00330(7). Thereafter, he was indicted on August 18, 1998, for possession with intent to distribute 240 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), a charge to which he later pleaded guilty. Ramirez was sentenced on January 4, 1999, in the United States District Court for the Southern District of Texas—McAllen Division to sixty (60) months of imprisonment in Criminal Case No. 7:98–CR–00330(7). *See* Boyd Decl. ¶¶ 4–7.

On February 10, 1999, Ramirez was indicted in the United States District Court for the Southern District of Texas—Houston Division for conspiracy to possess with intent to distribute cocaine and marijuana in violation of 21 U.S.C. § 846 in Criminal Case No. 4:99–CR–00080(1). Ramirez again pleaded guilty and was sentenced on November 16, 1999, to 200 months of imprisonment "to run concurrently with the Federal Sentence that has been imposed in the United States District Court, McAllen Division, under Cause No. M–98–330–07." Boyd Decl. ¶¶ 8–9, Attachment 5. Ramirez did not appeal his convictions and sentences.

In the instant petition, Ramirez brings a single claim under 28 U.S.C. § 2241. Broadly construed, he alleges that the BOP has miscalculated his sentence by not awarding him full credit and for not aggregating his two sentences properly. Dkt. No. 1 at 4. In short, Ramirez appears to believe that both of his federal sentences commenced on November 16, 1999, and contends that he

should receive credit on both of his federal sentences from the date he was arrested, July 27, 1998, through November 16, 1999. *Id.* As support, Ramirez asserts that following his sentencing in Criminal Case No. 7:98–CR–00330(7), he was never transferred to the BOP to begin serving his sentence nor was he ever designated to any BOP facility. *Id.* The BOP disputes Ramirez's claims, stating that Ramirez's respective sentences commenced on the date they were imposed and that Ramirez has already been awarded all the credit to which he is entitled. Dkt. No. 6 at 5–6. Consequently, the BOP requests that this Court deny Ramirez's instant § 2241 petition.

## II.  STANDARD OF REVIEW

The essence of a petition for writ of habeas corpus under 28 U.S.C. § 2241 is an attack by a person in custody upon the legality of that custody, and the traditional function of the writ is to secure release from illegal custody. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Thus, a § 2241 petition attacks the manner in which a prisoner's sentence is carried out or the prison authorities' determination of its duration. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000). A petition for writ of habeas corpus may only be filed in the district where the prisoner is incarcerated. *Id*.

Because Walton filed his habeas petition pro se, his "'complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)), and liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding pro se pleadings to less stringent standards than formal pleadings drafted by lawyers); *United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997). Nevertheless, pro se litigants are still required to provide sufficient facts to support their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).


## III. ANALYSIS

As an initial matter, federal prisoners must exhaust all available administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). Exceptions to the exhaustion requirement arise when "available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Id.* These exceptions "apply only in extraordinary circumstances," and the petitioner bears the burden of establishing that administrative review would be futile in his case. *Id.*

The BOP, which administers the prison in which Edwards is incarcerated, has a four-step process for resolving complaints by prisoners. Initially, a prisoner must attempt to informally resolve the complaint with staff by filing a BP-8 form. 28 C.F.R. § 542.13(a). If informal attempts are unsuccessful, the prisoner must submit a written complaint to the Warden using a BP-9 form. 28 C.F.R. § 542.14(a). If the prisoner is not satisfied with the Warden's response, he may appeal to the Regional Director using a BP-10 form. 28 C.F.R. § 542.15. If still unsatisfied, the prisoner may appeal to the Office of General Counsel using form BP-11. 28 C.F.R. § 542.15. Here, both Ramirez and the BOP agree that Ramirez has exhausted his administrative remedies. Dkt. No. 6 at 3.

### A.   Commencement of Ramirez's Sentence in Criminal Case No. 7:98–CR–00330(7)

The bulk of Ramirez's argument appears to derive from his belief that the sentence in his first criminal case, No. 7:98–CR–00330(7), did not begin to run until November 16, 1999,[1] the date his

---

[1] The Court notes that there is a discrepancy in Ramirez's filings concerning when he believes the sentence in his second criminal case, No. 4:99–CR–00080(1), began to run. For example, Ramirez states in his petition that both of his sentences commenced on November 16, 1999, the date on which the sentence in his second criminal case was imposed. Dkt. No. 1 at 4. Yet in Ramirez's Reply and his Motion for Leave to Supplement, he stresses that both of this sentences

the sentence in his second criminal case, No. 4:99–CR–00080(1), was imposed. His primary contention is that because he was never designated to federal facility by the BOP, his sentence never started. Dkt. No. 1, Attachment 1 at 2; Dkt. No. 7 at 2. Ramirez also asserts that his case is controlled by the disposition in *Walton v. Maye*, No. 10–CV–844, 2011 WL 3423361 (W.D. Tex. Aug. 5, 2011). However, after carefully reviewing the parties' arguments as well as the documentation provided, the Court finds that Ramirez's sentence in Criminal Case No. 7:98–CR–00330(7) commenced on January 4, 1999, and that his reliance on *Walton* is misplaced.

Section 3585(a) provides, in relevant part, that "[a] sentence to a term of imprisonment commences on the date the defendant is received *in custody awaiting transportation* to . . . the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a) (emphasis added). The BOP's Program Statement on sentence computation further explains:

> If the prisoner is serving no other federal sentence at the time the sentence is imposed, and is in exclusive federal custody (not under the jurisdiction of a federal writ of habeas corpus ad prosequendum) at the time of sentencing on the basis of the conviction for which the sentence is imposed, the sentence *commences on the date of imposition* . . . .

---

started running on November 26, 1999, the date on which Ramirez was designated; Ramirez claims he was not awaiting transportation to a federal facility until that date. *See* Dkt. No. 7 at 2; Dkt. No. 8 at 1–2.

To the extent Ramirez argues that both of his criminal sentences started on November 26, 1999, the Court rejects his contention. Section 3585(a) provides that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served." On November 16, 1999, Ramirez was already "*in custody* awaiting transportation to . . . the official detention facility." 18 U.S.C. § 3585(a) (emphasis added). The fact that Ramirez had not yet been designated to an official detention facility does not mean that Ramirez was not "in custody awaiting transportation" to such a facility. Ramirez does not assert nor has he presented any evidence suggesting that he was not "in custody" from November 16, 1999, until November 26, 1999. Thus, there is no question that Ramirez's second sentence commenced on November 16, 1999. The remaining issue is whether Ramirez's first sentence also commenced on that date.

BUREAU OF PRISONS, PROGRAM STATEMENT 5880.28, 1–12 (July 20, 1999), *available at* http://www.bop.gov/DataSource/execute/dsPolicyLoc (emphasis added) [hereinafter PROGRAM STATEMENT]; *accord Walton*, 2011 WL 3423361 at *3 (noting that the BOP's position that Walton started serving his sentence as soon as he was sentenced was correct where only one charge is pending and where Walton was in custody at the time of sentencing).

In this case, Ramirez was "in custody" when he was sentenced in Criminal Case No. 7:98–CR–00330(7). The Prisoner Tracking System report demonstrates that Ramirez was in continuous custody beginning on July 27, 1998, the date he was arrested. *See* Boyd Decl., Attachment 2 at 2. Furthermore, Ramirez's argument that the BOP's failure to designate him to an official detention facility means that his sentence had not yet started must fail. The statutory language governing sentencing does not require designation for a sentence to commence. Rather, 18 U.S.C. § 3585(a) only requires that a prisoner be "in custody awaiting transportation" to the official detention facility, whether or not the BOP has made its designation. At the time of sentencing in Criminal Case No. 7:98–CR–00330(7), Ramirez was in custody and awaiting transportation to the official facility. Thus, Ramirez's sentence in Criminal Case No. 7:98–CR–00330(7) commenced on January 4, 1999, the date his sentence was imposed.

Moreover, Ramirez's reliance upon this Court's decision in *Walton v. Maye* is misplaced. In *Walton*, the petitioner had been arrested in Tennessee in October, 2003, after local authorities found cocaine in his car. He was released on pre-trial bond in November, 2003, and returned to Houston. He remained on bond until February, 2005, when he was arrested by federal authorities on federal criminal charges pending in Philadelphia, Pennsylvania. The next day, Walton made an initial appearance before a magistrate judge in the Southern District of Texas, and he was ordered

detained pending his trial in Philadelphia. He was then transferred from the Southern District of Texas to the Eastern District of Pennsylvania. Almost ten months later, in January, 2006, while still awaiting trial on the Philadelphia case, he was transferred by the U.S. Marshal to the Middle District of Tennessee to stand trial on federal charges that had been filed arising out of the stop in 2003. Within weeks of arriving in Tennessee, Walton pleaded guilty to possession with intent to distribute five or more kilograms of cocaine, and on January 30, 2006, he was sentenced to a 120-month term of imprisonment. He was then returned to Philadelphia to address the charge pending in that district. More than two years later, Walton went to trial in the Philadelphia case, a jury found him guilty of three drug charges, and on December 3, 2008, the District Judge sentenced him to a 180-month sentence to run concurrently with "any undischarged term of imprisonment." *Walton*, 2011 WL 3423361 at *1. This Court found that Walton had been transported from Tennessee to Philadelphia not to "await transport" to the BOP, but rather to stand trial on the charges in Philadelphia. *Id.* at *6. Consequently, the Court determined that Walton's Tennessee sentence commenced on December 3, 2008, not January 30, 2006. *Id.*

The instant case is easily distinguished from *Walton*. In *Walton*, federal criminal charges had already been filed in Pennsylvania by the time the petitioner was sentenced on the charges in his first criminal case in Tennessee. Thus, it became a factual inquiry as to whether the petitioner was "in custody awaiting transportation" to the official federal facility where he would serve his sentence or whether he was in custody awaiting resolution of the charges in the Eastern District of Pennsylvania. Here, no charges were pending against Ramirez *at the time of his sentencing* in Criminal Case No. 7:98–CR–00330(7). Consequently, Ramirez "could not have been doing anything *but* awaiting transportation to the official detention facility where he would serve his

sentence." Dkt. No. 6 at 4 (emphasis in original). Because Ramirez was not facing any pending charges at the time of his sentencing in Criminal Case No. 7:98–CR–00330(7), *Walton* is not applicable to the instant case and his reliance upon this Court's decision in that case is misplaced.

Although Ramirez does not contend that the charges in Criminal Case No. 4:99–CR–00080(1) were filed after he was sentenced in Criminal Case No. 7:98–CR–00330(7), he appears to contend that he was actually in custody waiting to face the charges in Criminal Case No. 4:99–CR–00080(1) because the government "knew full well they were charging [him]." Dkt. No. 7 at 3. He further argues that he was moved to another facility on January 6, 1999, in order to answer the charges in Criminal Case No. 4:99–CR–00080(1) and that the BOP's failure to designate him to a particular facility proves that he was not "in custody awaiting transportation" to an official detention facility. *Id.* However, Ramirez could not have been in custody waiting to face the charges in Criminal Case No. 4:99–CR–00080(1) because no charges had been filed as of January 4, 1999—the case did not even exist on that date. The charges in Criminal Case No. 4:99–CR–00080(1) were not filed until February 10, 1999, over a month after Ramirez was sentenced in Criminal Case No. 7:98–CR–00330(7). Ramirez's assertion that the government knew it was going to charge him in Criminal Case No. 4:99–CR–00080(1) and that he was moved to another facility to answer those charges amount to nothing more than pure speculation. He presents no evidence to support his assertions. Contrary to Ramirez's belief, he could not have been waiting to face charges that had not yet been filed for the purposes of 18 U.S.C. § 3585(a).

Additionally, Ramirez's argument that the BOP's failure to designate his detention facility proves that he was waiting to face the charges in his second criminal case also fails. As explained previously, 18 U.S.C. § 3585(a) only requires that a prisoner be "in custody awaiting transportation"

to the official detention facility for a sentence to commence; the statutory language does not require designation. Therefore, to the extent Ramirez argues that he was actually in custody waiting to answer the charges in Criminal Case No. 4:99–CR–00080(1) despite the fact that no criminal charges were filed in that case until February 10, 1999, the Court rejects his contention.

In summary, the Court concludes that Ramirez's sentence in Criminal Case No. 7:98–CR–00330(7) commenced on January 4, 1999, the date of its imposition.

**B.      The BOP's Calculation of Ramirez's Sentence**

Having determined that Ramirez's sentence in Criminal Case No. 7:98–CR–00330(7) commenced on January 4, 1999, the Court now turns to the question of whether the BOP correctly calculated Ramirez's aggregate sentence. As noted previously, Ramirez was sentenced to a term of 60 months in Criminal Case No. 7:98–CR–00330(7), commencing on January 4, 1999, and a term of 200 months in Criminal Case No. 4:99–CR–00080(1), beginning on November 16, 1999. In the latter case, District Judge Melinda Harmon ordered Ramirez's sentence to "run concurrently with the Federal Sentence that has been imposed in the United States District Court, McAllen Division, under Cause No. M–98–330–07." Boyd Decl., Attachment 5 at 2.

Section 3584 governs the terms of imprisonment when multiple sentences are imposed. It provides, in relevant part, that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." 18 U.S.C. § 3584(c). The BOP Sentence Computation Manual provides guidance on calculating a prisoner's aggregate term of imprisonment where, as here, the commencement date and end date of the prisoner's second sentence occurs after the commencement date and end date, respectively, of the prisoner's first sentence. PROGRAM STATEMENT, 1–36; 1–37; *see also* Boyd

Decl. ¶¶ 13–15.  First, the effective full terms of both sentences are computed.  Next, the effective full term of the first federal sentence is subtracted from the effective full term of the second federal sentence, resulting in the amount of "overlap" time.  This "overlap" time is essentially the amount of time left remaining on the prisoner's second federal sentence after the effective full term of the prisoner's first federal sentence has run.  The entirety of the prisoner's first sentence is then added to the amount of "overlap" time to arrive at the aggregate term of imprisonment for the prisoner.  The commencement date of this aggregated term of imprisonment is the same date as the commencement date for the prisoner's first federal sentence.  Any credit for prior custody is then deducted from this aggregated sentence.  PROGRAM STATEMENT, 1–36; 1–37; *see also* Boyd Decl. ¶¶ 13–14.

    Having recalculated Ramirez's sentence in accordance with the formula provided above, the Court finds no error in the BOP's calculation of his sentence.  The effective full term of Ramirez's first federal sentence (Criminal Case No. 7:98–CR–00330(7)) was January 3, 2004; the effective full term of Ramirez's second federal sentence (Criminal Case No. 4:99–CR–00080(1)) is July 15, 2016.  Subtracting the effective full term of his first federal sentence from his second federal sentence results in an "overlap" time of twelve years, six months, and twelve days.  As noted previously, this is essentially the amount of time remaining on Ramirez's second federal sentence *after* the conclusion of his first federal sentence.  The BOP then added the entirety of Ramirez's first federal sentence, or sixty months, to the amount of "overlap" time, arriving at an aggregated term of imprisonment of seventeen years, six months, and twelve days.  This aggregated sentence commenced on January 4, 1999.  Finally, the BOP awarded Ramirez 161 days of credit for the time he spent from the date of his arrest on July 27, 1998, until the date his first federal sentence was

imposed on January 4, 1999.  *See* Boyd Decl. ¶¶ 13–16, Attachments 7 and 9.  With good time credit, Ramirez's projected release date is November 3, 2013.  Boyd Decl., Attachment 7.  Although Ramirez may believe otherwise, the BOP did not err in its calculation of his sentence.

To the extent Ramirez argues that he has not been given full credit for time spent in custody, his contention is without merit.  Offenses committed after November 1, 1987, are governed by 18 U.S.C. § 3585(b), which provides in relevant part:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> (1)   as a result of the offense for which the sentence was imposed; or
>
> (2)   as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> *that has not been credited against another sentence.*

18 U.S.C. § 3585(b) (emphasis added).  As noted above, the BOP has already given Ramirez 161 days of credit against his aggregated sentence for the time he spent in custody from the date of his arrest on July 27, 1998, through the date his first federal sentence was imposed on January 4, 1999.  Boyd Decl. ¶ 16, Attachment 7.  As such, this time may not be credited to any other sentence.

Additionally, Ramirez may not receive credit towards his sentence in Criminal Case No. 4:99–CR–00080(1) for the time between the imposition of his first federal sentence on January 4, 1999, and the imposition of his second federal sentence on November 16, 1999.  This time has been credited to Ramirez's aggregate sentence as the BOP was required to treat his two terms of imprisonment "as a single, aggregate term of imprisonment."  18 U.S.C. § 3584(c); *see also* Boyd Decl., Attachment 7.  Thus, it may not be credited against his second sentence.  18 U.S.C. § 3585(b).

In summary, the Court concludes that the BOP correctly calculated Ramirez's sentence and that he has been given all due credit for time spent in custody. Therefore, the Court will recommend that the District Judge dismiss with prejudice his instant § 2241 petition.

**C.      Ramirez's Motion to Strike (Dkt. No. 11)**

Ramirez moves to strike the BOP's Response to his Motion for Leave to Supplement his petition. Ramirez's supplemental evidence does not alter the undersigned's recommendation on Ramirez's instant § 2241. Similarly, the Court's consideration of Ramirez's supplemental evidence is not affected by the BOP's Response.

In his motion for leave to supplement his § 2241, Ramirez presents a prisoner tracking report for a different inmate, arguing that the notations on that report show that Ramirez was not designated for a detention facility by the BOP until November 26, 1999. Dkt. No. 8 at 1–2. He contends that this proves he was not "in custody awaiting transportation" to a BOP facility and that he was actually being held to answer the charges in his second federal case. *Id.* Broadly construed, Ramirez is essentially arguing that the sentence in his first criminal case did not start until after he was designated by the BOP to an official detention facility on November 26, 1999.

However, as has already been discussed previously, the statutory language governing sentencing does not require designation for a sentence to commence. Instead, 18 U.S.C. § 3585(a) only requires that a prisoner be "in custody awaiting transportation" to the official detention facility, whether or not the BOP has made its designation. Ramirez does not contend he was not in custody during that time; he merely challenges the purpose for which he was in custody. The prisoner tracking report for Ramirez shows that he was in custody on January 4, 1999, the date of sentencing in his first criminal case. Boyd Decl., Attachment 2. Therefore, Ramirez was "in custody awaiting

transportation to . . . the official detention facility" on January 4, 1999, and his sentence in Criminal Case No. 7:98–CR–00330(7) commenced on that date.

In his Motion to Strike, Ramirez complains that evidence provided by the BOP in the Response, particularly the declaration of Albert Arias, should be stricken because Mr. Arias is not a disinterested party in the proceedings. Dkt. No. 11. Moreover, Ramirez contends that any arguments presented by the BOP that was not confined to addressing Ramirez's supplemental evidence should be discounted because such arguments should have been made in the BOP's initial response. *Id.* at 2. After considering Ramirez's Motion to Strike, the Court finds no basis for his complaints. In granting Ramirez's Motion for Leave to Supplement, the Court specifically ordered the BOP to respond to Ramirez's motion by April 29, 2013. Dkt. No. 9. The BOP filed its Response within the deadline set by the Court. Moreover, the evidence presented by Ramirez does not advance any new arguments. As noted above, Ramirez essentially uses the prisoner tracking report of another inmate to advance an argument he already made in his initial petition—that the BOP's delay in designating him to an official detention facility after he was sentenced in Criminal Case No.7:98–CR–00330(7) shows that his sentence in that case did not start until November 16, 1999. In its Response, the BOP addressed this argument. Finally, the Response does not affect the Court's judgment on his supplemental evidence or his instant § 2241 petition. Because the Court finds no basis for Ramirez's Motion to Strike, the Court hereby **DENIES** his motion.

## IV.  RECOMMENDATION

In light of the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **DISMISS with prejudice** Petitioner Alfredo Ramirez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. No. 1).

## V.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 31st day of July, 2013.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE